JUDGE KAPLAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
GMA ACCESSORIES, INC.


07 CV 8414

        Plaintiff,

**COMPLAINT and**
**Jury Demand**

Civil Action No.:

- against -

EPARTNERS, INC.

        Defendants.
------------------------------------------------------X

Plaintiff, GMA Accessories, Inc., (hereinafter "GMA"), brings this complaint against, Defendant ePartners, Inc. (hereinafter "ePartners") alleging upon information and belief as follows:

## NATURE OF THE CASE

GMA entered into various agreements with the defendant for the purpose of upgrading and installing a state of the art computer system for GMA's wholesale fashion business. After GMA paid ePartner's substantial amounts in reliance upon the contracts and ePartners' promises, it was left with an abandoned project and the loss of substantial resources, not only in the out of pocket expenses but in loss of countless hours of executive and management resources dedicated to the ePartners' initiative as well as the monumental set back in GMA's business due to ePartner's willful breach of contract, and misrepresentations that were both negligent and fraudulent.

## PARTIES

1. Plaintiff, GMA, is a corporation duly organized and existing under the laws of the State of New York, with a place of business at 1 East 33rd Street, New York, New York. GMA

is a citizen of the state of New York

2. GMA does business as "Capelli".

3. Defendant ePartners is a corporation duly organized and existing under the laws of the State of Texas, with its principle place of business located at 6565 N. MacArthur Blvd., Suite 950, Irving, TX, 75039. ePartners is a citizen of the state of Texas.

## JURISDICTION AND VENUE

4. Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332 as the plaintiff is a citizen of a different state than defendant and the amount in controversy exclusive of interest and costs exceeds $75,000.00.

5. Venue is proper under 28 U.S.C. Sec. 1391 (b), and (c) and Sec. 1400 (a).

6. Plaintiff filed arbitration in Dallas, Texas. On or about July 2007, Defendant objected to venue and the parties stipulated to venue in New York Federal Court.

## FACTUAL ALLEGATIONS

7. On or about November 2003, Capelli contacted ePartners because it wanted to obtain a state of the art computer system for its fashion accessory wholesale business.

8. On or about December 2, 2003, ePartners sent information about ePartners company to Capelli.

9. Capelli informed ePartners of its need to upgrade its existing system, and to have a fully operational system and platform no later than March 31, 2006.

10. On or about December 15, 2003, ePartners proposed to Capelli the "Axapta" system as part of the solution for Capelli's needs.

2

11. On or about March 21, 2004, ePartners invited Capelli to Orlando, Florida to showcase the "Axapta" system.

12. ePartners followed-up this meeting by creating a proposal and a solution which was pitched to Capelli on May 21, 2004.

13. On or about June 17, 2004, ePartners conducted a presentation of the solution in Capelli's New Jersey Office.

14. On or about September 2, 2004, ePartners' conducted a presentation of its final proof of concept solution demo to department managers at Capelli.

15. Capelli stressed the need for the program to integrate with its fashion accessories.

16. On or about March 15, 2005, ePartners held a presentation of the ePartners' program in New York City.

17. On March 31, 2005, Capelli and ePartners signed a product order (the "Product Order").

18. The Product Order provided that ePartners would provide software, products, and modules to Capelli.

19. On June 8, 2005, ePartners and Capelli entered into a Master Services Agreement (hereinafter the "June 8 Master Services Agreement"). See Exhibit A hereto.

20. Under the June 8 Master Service Agreement, ePartners was to provide services to Capelli, including among other things the creation and completion of a project that would result in the implementation of a fully operational system and platform for Capelli.

21. On June 8, 2005, Capelli and ePartners entered into a Master Service Order (hereinafter the "June 8 Master Service Order"). See Exhibit B hereto.

22. The June 8 Master Service Order sets forth, among other things, the operating procedures, payment terms, and functionality of the system ePartners will provide to

Capelli. Annexed to the June 8 Master Service Order is a summary of the functions of the system (Exhibit C) and a description of some of the services ePartners claimed the system would perform. (Exhibit D).

23. On June 27, 2005, ePartners purported to outline the Capelli project, summarized the project approach, timeframes, roles and responsibilities of those involved in the project, and a communication plan. See Exhibit E hereto.

24. On or about June 27, 2005, Jon Lee, Engagement Manager of ePartners, assured Elie Saliba, Vice President of Informational Systems, at Capelli that ePartners would have the Axapta system, as well as a fully operational system and platform, up and running for Capelli no later than March 31, 2006. Id.

25. According to the schedule the project was supposed to begin August 16, 2005.

26. ePartners held its first project meeting on September 22, 2005 at Capelli's New York Offices.

27. On September 27, 2005, ePartners and Capelli finalized the payment terms in a document entitled "Master Service Order – GMA – 002 Addendum A" (herinafter "Addendum A").

28. All 4 agreements, the Product Order; the June 8 Master Services Agreement; the June 8 Master Services Order; and Addendum A are collectively referred to herein as the "AGREEMENTS."

29. On October 27, 2005, another project meeting took place at Capelli's New York Offices.

30. Section 7.1 of the June 8 Master Service Order and Addendum A specified, among other things, that ePartners was required to timely provide project status reports to Capelli, to assign adequate resources to the projects, to prepare appropriate project documentation, to reasonably prepare project plans, and to reasonably carry out other project tasks.

31. Section 7.6 of the June 8 Master Services Order and Addendum A specified that ePartners was obligated to replace any unsatisfactory ePartners personnel within two weeks, and to use commercially reasonable efforts to replace resources and personnel.

32. Section 5.2 of the June 8 Master Services Agreement specified that ePartners was obligated to perform services "in a good and workmanlike manner and in accordance with the specifications" of the project and orders from Capelli.

33. Section 5.2 of the June 8 Master Service Order specified that ePartners was obligated to configure and implement the software modules set forth in the product orders from Capelli.

34. Pursuant to Section 5.2.4 of the June 8 Master Service Order, ePartners was obligated to "Identify the Functional Requirements, develop the Detailed Design, Develop, and Test various customizations or complex configurations to the software. Those identified include the following: Pending Purchases Order; Freight/Duty and OOCL Interface; Bulk Orders and Confirmations; Single store vs. multi-store based on destination; Depleting Bulk Orders; Pack Items – piece and quantity; Bill of Lading; Download CIT Chargeback; Upload P/O Info to Cargo; Range Pack capability; and UPC / SKU auto generate."

35. Pursuant to Section 5.2.5 of the June 8 Master Service Order, "ePartners will provide assistance to [Capelli's] technical resources." ePartners was responsible for assisting "in data mapping and synchronization (import/export) processes and procedures" as well as providing "technical information" regarding the products identified in Product Order.

36. Pursuant to Section 5.2.6 of the June 8 Master Service Order, ePartners was to "configure and implement Production capability for domestic operations located in New Jersey."

5

ePartners was also required to "perform Discovery work related to international operations such that proper configurations decisions [would be] made to support the future roll-out (Phase 2) of the system to off-shore production locations."

37. Pursuant to Section 5.2.7 of the June 8 Master Service Order, ePartners and its designees were to "provide three (3) vendor mappings and training to the [Capelli] team to develop additional mappings."

38. Pursuant to Section 7.11 of the June 8 Master Service Order, ePartners was obligated to hire a Subject Matter Expert "to both support the Capelli project and to assist in the penetration of the Fashion and Apparel market," as well as another employee of Capelli's choosing as an additional member of the Capelli team.

39. ePartners failed to carry out any of the obligations set forth above, and thus committed material breaches of the Agreements.

40. Capelli informed ePartners at least as early as January 2006, that ePartners (a) did not timely provide project status reports to Capelli; (b) did not assign adequate resources to the projects, (c) did not prepare appropriate project documentation; (d) did not reasonably or adequately prepare project plans; (e) failed to reasonably carry out project tasks; (f) did not timely replace unsatisfactory ePartners personnel; (g) did not perform its services in a good or workmanlike manner, or in accordance with the specifications of the project and orders from Capelli; and (g) did not correctly configure or implement the software modules set forth in the product orders.

41. Capelli sent ePartners written complaints concerning the failure of ePartners to comply with its obligations, and repeatedly informed ePartners of how these failures were

6

harming Capelli's business. For example, in January 2006, Capelli sent ePartners a list of ePartners' failure to comply with its obligations.

42. Capelli repeatedly informed ePartners that ePartners was failing to meet its obligations under the Agreements, and that as a result the project was failing.

43. On or about January 24, 2006, ePartners acknowledged the problems and belatedly proposed new personnel and other anecdotes as possible solutions to the problems. See Exhibit F hereto.

44. ePartners continued its breach by failing to follow through with the solutions that ePartners itself proposed.

45. In March 2006, ePartners' project manager and senior consultant resigned from both the project and ePartners.

46. In May 2006, the Executive Vice President of ePartners who was also a key person to the project himself resigned from ePartners.

47. By May 2006, ePartners was fully aware that it was no where near fulfilling its promises to implement AXAPTA by March 31, 2006.

48. Though Capelli had been and continued to make all payments set forth in the September 27, 2005 agreement, it found itself with a project that was failed and ePartners promises to cure its breach also failing.

49. ePartners' failure to implement a fully operational system for Capelli resulted in a disruption of and damage to Capelli's business, which ePartners was aware relies on a fully operational information system.

50. On September 1, 2006 Capelli terminated the contracts for cause. See Exhibit G.

51. Capelli had made payments to ePartners pursuant to the agreements, in an amount totaling at least $843,000. Yet, despite the fact that Capelli had performed its obligations under the Agreements, ePartners failed to perform its obligations under the Agreements.

52. Capelli also incurred incidental costs and damages in the amount of approximately $500,000 in connection with its performance under the Agreements.

53. In light of ePartners' failure to perform its contractual obligations, Capelli demanded that ePartners return to Capelli the amounts that Capelli had paid to ePartners, and the additional costs and damages that Capelli had incurred as a result of ePartners' failure to carry out its contractual obligations. ePartners refused Capelli's demands.

### COUNT I – (breach of contract)

54. Plaintiff repeats and realleges paragraphs 1 through 53 as though fully set forth at length herein.

55. The Agreements are valid and binding contracts between Capelli and ePartners.

56. Capelli fully performed its obligations under the Agreements. Among other things, Capelli paid to ePartners no less than $843,000, and incurred additional costs and damages in the amount of approximately $500,000.

57. ePartners breached the Agreements as set forth above not only depriving GMA of the benefit bargained for but causing GMA severe detriment and damage.

58. As a result of ePartners' breach of the Agreements, Capelli suffered damages in an amount no less than the $843,000 it paid to ePartners for services and product that ePartners never performed or delivered, and additional costs and damages in an amount of approximately $500,000.

8

## COUNT II – (breach of implied warranty of good and workmanlike performance)

59. Plaintiff repeats and realleges paragraphs 1 through 58 as though fully set forth at length herein.

60. In carrying out its services and work for GMA, ePartners was obligated to carry out its services and work in accordance with the implied warranty of good and workmanlike performance.

61. ePartners failed to carry out its services and work for GMA in a good and workmanlike manner. As set forth below, ePartners failed to carry out many steps that were necessary in order to implement a fully operational system for GMA.

62. GMA performed all of its express and implied obligations and received absolutely no benefit.

63. As a result of ePartners' breach of the implied warranty of good and workmanlike performance, Capelli suffered damages in an amount no less than the $843,000 it paid to ePartners for services and product that ePartners never performed or delivered, and additional costs and damages in an amount of approximately $500,000.

## COUNT III – (breach of duty of good faith and fair dealing)

64. Plaintiff repeats and realleges paragraphs 1 through 63 as though fully set forth at length herein.

65. ePartners' conduct had the effect of destroying or injuring the rights of Capelli to receive the fruits of the agreements which plaintiff has not benefited by whatsoever.

66. Wherefore ePartners breached its duty of good faith and fair dealing to Capelli.

9

67. As a result of ePartners' breach of its duty of good faith and fair dealing, Capelli suffered damages in an amount no less than the $843,000 it paid to ePartners for services and product that ePartners never performed or delivered, and additional costs and damages in an amount of approximately $500,000.

### COUNT IV – (unjust enrichment)

68. Plaintiff repeats and realleges paragraphs 1 through 67 as though fully set forth at length herein.

69. Defendant was unjustly enriched.

70. The enrichment was at the plaintiff's expense

71. The circumstances are such that in equity and good conscience the defendant should return the money or [benefit] to the plaintiff.

72. ePartners has been unjustly enriched in an amount no less than the $843,000.

### COUNT V – (negligent misrepresentation)

73. Plaintiff repeats and realleges paragraphs 1 through 72 as though fully set forth at length herein.

74. Defendant made negligent misrepresentations to plaintiff.

75. The misrepresentation occurred in a close relationship between plaintiff and defendant.

76. There was actual privity of contract between the plaintiff and defendant.

77. On June 27, 2005 ePartners by Jon Lee promised among other things that: (a) Axapta would be implemented by March 31, 2006 utilizing out of the box with core functionality as required; (b) the Business Process Verification and Validation (VnV), Infrastructure Analysis and the Project Management activities would begin during the Origination Phase of the project; (c) during VnV, key team members of the Capelli Unified Project Team (SuperUsers) would be trained to understand the fundamentals of the Axapta application; and that (d) certain project timeframes would be met. See Exhibit F hereto.

78. On January 24, 2006, ePartners by Eric Forgo represented among other things (a) "that Axapta is precisely the right ERP platform to support your business"; (b) "ePartners is continuing work exclusively on system Design and remains confident that Axapta will meet system requirements"; (c) "Axapta Practice Management will complete a monthly project quality assurance review". See Exhibit G.

79. All of the aforementioned representations and others were material.

80. All of the aforementioned representations and others were unfulfilled, false and misleading.

81. Because of ePartners' negligent misrepresentations, Capelli suffered damages in an amount no less than the $843,000 it paid to ePartners for services and product that ePartners never performed or delivered, and additional costs and damages in an amount of approximately $500,000.

## COUNT VI - fraud

82. Plaintiff repeats and realleges paragraphs 1 through 81 as though fully set forth at length herein.

83. Defendants committed fraud, including fraud in the inducement

84. Defendant made these aforementioned material misrepresentations and others for the purpose of inducing the plaintiff to rely on them.

85. Plaintiff forseeably relied upon these misrepresentations and others in contracting and making payments with and to defendant.

86. Plaintiff forseeably relied upon these misrepresentations in continuing to make payments and incur other costs and damages.

87. At all times relevant hereto, Plaintiff was ignorant of the falsity of the misrepresentations.

88. As a result of ePartners' fraud and fraud in the inducement, Capelli suffered damages in an amount no less than the $843,000 it paid to ePartners for services and product that ePartners never performed or delivered, and additional costs and damages in an amount of approximately $500,000.

**WHEREFORE**, PLAINTIFF prays:

    A.  That this Court adjudge that the Defendants have breached the Agreements.

    B.  That Defendant return $843,000 to Plaintiff in payments along with $500,000 in consequential and incidental damages for a total judgment in GMA's favor of $1,343,000.

    C.  That Plaintiff recover from defendant punitive and exemplary damages in an amount to be determined at trial.

    D.  That Capelli recover pre-judgment and post-judgment interest on each and every award.

    E.  That Capelli recover its reasonable attorney fees incurred in this action.

    F.  That Capelli have and recover its taxable costs and disbursements incurred in this action.

    G.  That Capelli have such other and further relief as the Court may deem just and proper.

## JURY DEMAND

GMA respectfully requests a trial by jury as to all issues.

Dated: New York, New York
September 27, 2007

Respectfully Submitted,

THE BOSTANY LAW FIRM

By: _____
ANDREW T. SWEENEY (AS-0724)
Attorney for Plaintiff GMA Accessories, Inc.
40 Wall Street, 61st Floor
New York, New York 10005
(212) 530-4400