UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

GMA ACCESSORIES, INC.,                          :    **ECF CASE**
                                                :
                                                :    No. 07 CV 8414 (LAK)
                              Plaintiff,         :
                                                :
          - against -                           :
                                                :
EPARTNERS, INC.                                 :
                              Defendant.         :
                                                :
                                                :
-------------------------------------------------------- X

## REPLY MEMORANDUM OF LAW IN FURTHER
## SUPPORT OF DEFENDANT'S MOTION TO DISMISS

THELEN REID BROWN
RAYSMAN & STEINER LLP
Peter Brown
Sheryl H. Altwerger
875 Third Avenue
New York, New York 10022
(212) 603-2000

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ...................................................................................... 1

    POINT I.   GMA Fails to Plead its Fraud and Negligent
                 Misrepresentation Claims with Sufficient Particularity ................................. 2

        1.   GMA's Re-Pleading of its Fraud Claim
             Fails to Satisfy Rules 9(b) and 12(b)(6). ...................................................... 2

        2.   GMA's Re-Pleading of its Negligent Misrepresentation
             Claim Fails to Satisfy Rules 9(b) and 12 (b)(6)........................................... 5

             A.    GMA Cannot Prove that ePartners
                     Made Any Actionable False Representations................................. 6

             B.    GMA Cannot Establish a Duty as a Result of
                     a Special Relationship Between the Parties.................................... 7

    POINT II.   GMA Cannot Refute that the
                Economic Loss Rule Bars its Negligent
                 Misrepresentation and Fraud Claims ............................................................ 9

        1.   The Economic Loss Rule Bars GMA's Negligent
             Misrepresentation and Fraud Claims, Even as
             Re-Pled, Because of the Nature of the Damages Sought. .......................... 9

        2.   The Economic Loss Rule Bars GMA's Negligent
              Misrepresentation Claim, Even as Re-Pled,
             Because No Separate Legal Duty Has Been Pled...................................... 10

    POINT III.  The Existence of Valid, Enforceable Agreements
                 Between the Parties Warrant Dismissal
                 of GMA's Quasi-Contractual Claims.......................................................... 10

    POINT IV.  GMA Cannot Prove that its Breach of
                 Implied Warranty Claim Should
                 Survive ePartners' Motion to Dismiss........................................................ 12

1.    GMA Cannot Refute that New York Recognizes
No Cause of Action for Breach of Implied
Warranty of a Service-Oriented Contract. .................................................. 12

2.    The Waiver of Implied Warranties Provision is Enforceable ................... 13

POINT V.   GMA's Claim for Punitive and Exemplary Damages
Cannot Survive ePartners' Motion to Dismiss ............................................. 13

CONCLUSION ...................................................................................................................... 15

# TABLE OF AUTHORITIES

## CASES

**Page**

*AT&T Info. Sys. Inc. v. McLean Bus. Servs., Inc.*,
175 A.D.2d 652, 572 N.Y.S.2d 582 (4th Dep't 1991) .................................................. 14

*Acito v. IMCERA Group, Inc.*,
47 F.3d 47 (2d Cir. 1995) ............................................................................................... 2

*Barnett v. City of Yonkers*,
731 F. Supp. 594 (S.D.N.Y. 1990) ............................................................................... 12

*Cannon v. Douglas Ellman, LLC*,
No. 06 Civ. 7092, 2007 WL 4358456 (S.D.N.Y. Dec. 10, 2007) ................................. 7

*Carmania Corp., N.V. v. Hambrecht Terrell Int'l*,
705 F. Supp. 936 (S.D.N.Y. 1989) ........................................................................... 9, 10

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
70 N.Y.2d 382, 521 N.Y.S.2d 653 (1987) ................................................................... 10

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
375 F.3d 168 (2d Cir. 2004) ...................................................................................... 5-6

*King v. Crossland Sav. Bank*,
111 F.3d 251 (2d Cir. 1997) ..................................................................................... 6, 7

*Maalouf v. Salomon Smith Barney, Inc.*,
No. 02 Civ. 4770, 2003 WL 1858153 (S.D.N.Y. Apr. 10, 2003) ................................ 11

*McMahan & Co. v. Bass*,
250 A.D.2d 460, 673 N.Y.S.2d 19 (1st Dep't 1998) ..................................................... 9

*Miramax Film Corp. v. Abraham*,
No. 01 CV 5202, 2003 WL 22832384 (S.D.N.Y. Nov. 25, 2003) ................................ 3

*Nasik Breeding & Research Farm Ltd. v. Merck & Co.*,
165 F. Supp. 2d 514 (S.D.N.Y. 2001) .......................................................................... 7

*Non-Linear Trading Co., Inc. v. Braddis Assocs., Inc.*,
243 A.D.2d 107, 675 N.Y.S.2d 5 (1st Dep't 1998) ....................................................... 2

*Ohio Players, Inc. v. Polygram Records, Inc.*,
No. 99 Civ. 0033, 2000 WL 1616999 (S.D.N.Y. Oct. 27, 2000) ................................ 11

*Orlando v. Novurania of Am., Inc.,*
    162 F. Supp. 2d 220 (S.D.N.Y. 2001) ................................................................. 9, 10

*Perlmutter v. Beth David Hosp.,*
    308 N.Y. 100, 123 N.E.2d 792 (1954) ....................................................... 12

*Phillips v. Am. Int'l Group, Inc.,*
    498 F. Supp. 2d 690 (S.D.N.Y. 2007) ......................................................... 7

*Rocanova v. Equitable Life Assurance Soc'y of U.S.,*
    83 N.Y.2d 603, 612 N.Y.S.2d 339 (1994) ................................................... 14

*Rosoff v. Mountain Laurel Ctr. for the Performing Arts,*
    317 F. Supp. 2d 493 (S.D.N.Y. 2004) ......................................................... 6

*In re September 11 Prop. Damage and Bus. Loss Litig. v. Port Auth.,*
    468 F. Supp. 2d 508 (S.D.N.Y. 2006) ........................................................ 12

*Sofi Classic S.A. de C.V. v. Hurowitz,*
    444 F. Supp. 2d 231 (S.D.N.Y. 2006) .................................................. 13-14

*Telecom Int'l Am., Ltd. v. AT&T Corp.,*
    280 F.3d 175 (2d Cir. 2001) ...................................................................... 3

*Traub v. Cornell Univ.,*
    No. 94 Civ. 502, 1998 WL 187401 (N.D.N.Y. Apr. 15, 1998) ........................... 12, 13

*Tuosto v. Philip Morris USA Inc.,*
    No. 05 Civ. 9384, 2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007) ......................... 5, 6

*U S West Fin. Servs., Inc. v. Tollman,*
    786 F. Supp. 333 (S.D.N.Y. 1992) ............................................................. 6

*Ventus Networks, LLC v. Answerthink, Inc.,*
    No. 05 Civ. 10316, 2007 WL 582736 (S.D.N.Y. Feb. 22, 2007) ............................ 14

*Wexner v. First Manhattan Co.,*
    902 F.2d 169 (2d Cir. 1990) ..................................................................... 3, 6

## STATUTES

Federal Rule of Civil Procedure 12(b)(6) .................................................................. 2, 14

Federal Rule of Civil Procedure 9(b) ...................................................................... 2, 6

THELEN REID BROWN
RAYSMAN & STEINER LLP
Peter Brown
Sheryl H. Altwerger
875 Third Avenue
New York, New York 10022
(212) 603-2000

Attorneys for Defendant ePartners Incorporated

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

GMA ACCESSORIES, INC.,

                                     Plaintiff,

            - against -

EPARTNERS, INC.

                                   Defendant.

-------------------------------------------------------- X

     **ECF CASE**

     No. 07 CV 8414 (LAK)

     **REPLY MEMORANDUM
     OF LAW IN FURTHER
     SUPPORT OF DEFENDANT'S
     MOTION TO DISMISS**

## PRELIMINARY STATEMENT

       Defendant ePartners Incorporated ("ePartners"), through its attorneys Thelen Reid Brown

Raysman & Steiner LLP and Hermes Sargent Bates, LLP, respectfully submits its Reply

Memorandum of Law in further support of its motion pursuant to Federal Rule of Civil

Procedure 12(b)(6) to dismiss Counts 2 through 6 of the Amended Complaint filed by GMA

Accessories, Inc. (the "Motion to Dismiss"). In its original moving papers, ePartners established

that Counts 2 through 6 of the Amended Complaint should be dismissed for failure to state a

cause of action. For the reasons set forth below, GMA Accessories, Inc. ("GMA") has not and

cannot demonstrate that Counts 2 through 6 adequately state causes of action to survive

ePartners' Motion to Dismiss.

## POINT I

### GMA Fails to Plead its Fraud and Negligent Misrepresentation Claims with Sufficient Particularity

Because of GMA's failure to meet the pleading standards for fraud and negligent misrepresentation, whether through its Amended Complaint or its proposed Second Amended Complaint,[1] GMA's fraud and negligent misrepresentation claims fail as a matter of law and should therefore be dismissed.

**1.    GMA's Re-Pleading of its Fraud Claim Fails to Satisfy Rules 9(b) and 12(b)(6)**

In a bid to save its fraud claim, GMA's Opposition contains a proposed Second Amended Complaint that, like the original Amended Complaint, fails to meet the standards required by Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.  As noted in ePartners' Motion to Dismiss, a fraud claim must be pled with the required particularity, and must:

> (1) specify the statements that the [party] contends were fraudulent;
> (2) identify the speaker;
> (3) state where and when the statements were made; and
> (4) explain why the statements were fraudulent.

*Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 51 (2d Cir. 1995).

GMA attempts to base its fraud claims on alleged misrepresentations relating to future performance, which are not actionable through a fraud-based claim.  *See Non-Linear Trading Co., Inc. v. Braddis Assocs., Inc.*, 243 A.D.2d 107, 118, 675 N.Y.S.2d 5, 13 (1st Dep't 1998).  As argued in ePartners' Motion to Dismiss, while a party asserting a fraud claim is required to only plead a factual basis that gives rise to a strong inference of fraudulent intent, the requirement

---

[1] In its Opposition to ePartners' Motion to Dismiss (GMA's "Opposition"), GMA requests leave to file the proposed Second Amended Complaint attached thereto.  For the sake of judicial economy, ePartners addresses the proposed Second Amended Complaint as part of the present Motion to Dismiss, as if the proposed Second Amended Complaint were filed at this time in the form presented to the Court in GMA's Opposition.

does not mean that the plaintiff is given a license to base claims of fraud on speculation and conclusory allegations. *See Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir. 1990). Nor may fraud claims be based on representations of harmless self-praise. *See Telecom Int'l Am., Ltd. v. AT&T Corp.,* 280 F.3d 175, 196 (2d Cir. 2001) (harmless self-praise concerning a defendant's experience does not rise to the level of fraudulent inducement). Only a misrepresentation of *present* fact is actionable under a fraud claim. *Miramax Film Corp. v. Abraham,* No. 01 CV 5202, 2003 WL 22832384, at *12 (S.D.N.Y. Nov. 25, 2003).

None of the allegedly fraudulent statements asserted in the Amended Complaint *or* the proposed Second Amended Complaint meet the well-established standards set forth above. GMA's allegations that ePartners made fraudulent representations are based on representations of future performance or harmless self-praise, as evidenced in the following excerpts from the proposed Second Amended Complaint:

> 13.    … ePartners assured GMA that its 'Axapta' system *could* fulfill GMA's needs.
> …
> 18.    … ePartners senior officers … made the following material promises to the plaintiff's [sic] CEO George Altirs: the AXAPTA system provided to GMA by ePartners and installed by ePartners *would have* the ability to: identify design efforts [*et cetera*]….
> …
> 29.    On or about June 27, 2005, Jon Lee, Engagement Manager of ePartners, assured Elie Saliba, Vice President of GMA's Information Systems, that ePartners *would have* the fully operational system and platform, [sic] up and running for GMA no later than March 31, 2006.
> …
> 84.    On June 27, 2005, before the August and September contracts were signed,[2] ePartners by Jon Lee promised [sic] among other things that: (a) Axapta *would be* implemented by March 31, 2006…; (b) the Business Process Verification and Validation (VnV), Infrastructure Analysis and the Project Management activities *would begin* during the Origination Phase of the project; (c) during VnV, key team members… *would be*

---

[2] It is unclear to which contracts GMA refers. The proposed Second Amended Complaint makes no reference to any documents with August or September execution dates, other than a September 27, 2005 addendum to the Master Service Order regarding payment terms. *See* proposed Second Amended Complaint at ¶32.

trained to understand the fundamentals of the Axapta application; and that
(d) certain project timeframes *would be* met.

Proposed Second Amended Complaint at ¶¶ 13, 18, 29, 84 (emphasis added).  The use of the

words "could" and "would" show that these alleged statements are conditional statements used to

express a possibility of a future event or occurrence, and not a representation of a present fact, as

required under the law to bring a fraud claim.

Moreover, GMA's own proposed Second Amended Complaint show the fallacy of its

fraud and fraudulent inducement claim, as the allegedly fraudulent statements in paragraphs 29

and 84 were made *after* the parties allegedly entered into the subject agreements.  *See* proposed

Second Amended Complaint at ¶¶ 29, 84 (statements allegedly made on June 27, 2005) *and* at ¶¶

22 ("On March 31, 2005, GMA … entered into a product order …"), 24 ("On June 8, 2005,

ePartners and GMA entered into a Master Services Agreement …"), 26 ("On June 8, 2005, GMA

and ePartners entered into a Master Service Order …").

In addition to GMA's unsuccessful attempts to plead a fraud claim as outlined above,

GMA's reference to an email chain also fails to satisfy the pleading requirements for a fraud

claim.  *See* proposed Second Amended Complaint at ¶ 94 and Ex. G annexed thereto.  GMA

argues that the emails are an online conversation among ePartners officers that describes its

"scam ... at a baseball game."  Proposed Second Amended Complaint at ¶94.  The email

exchange reads as follows:

> Michael J. Znachko ("MZ"):  Ken, Eric, thinking about you. How did the
> Capelli [GMA] mtg go?
> Ken Eldridge: Very well [sic] but we will be able to tell you more after we
> meet with them this morning to negotiate contracts / pricing.
> MZ: Amen… thank goodness
> Eric Forgo ("EF"):  We hit a triple and are rounding third to see if we can
> slide at home.
> MZ: Praise the Lord….
> EF:  … And we are now in a run down between third and home.

MZ:  Ya'll get that thing closed……get to home plate…..best….z
MZ:  Did ya'll get to home plate – is the deal done?  Thinking of ya'll…..z
EF:  Thanks.  Still negotiating.

Proposed Second Amended Complaint at Ex. G.  It is obvious that these emails are merely part of a discussion about the status of the contract negotiations between GMA and ePartners for the subject project, with the addition of baseball terms as an analogy.  These emails in no way demonstrate that ePartners made fraudulent statements or were otherwise part of a "scam."

Based on the foregoing, GMA's attempt to re-plead its fraud claim in its proposed Second Amended Complaint fails to meet the required standards and should be dismissed for failure to state a claim.

**2.    GMA's Re-Pleading of its Negligent Misrepresentation
       Claim Fails to Satisfy Rules 9(b) and 12(b)(6)**

GMA argues in its Opposition that a cause of action for negligent misrepresentation may lie in a case where the parties are also contractually bound.  While that may be true in certain circumstances, it is not the case here.  As explained below, GMA's negligent misrepresentation cause of action fails to state a claim for which relief may be granted, as pled in its original Amended Complaint *and* its proposed Second Amended Complaint.

To succeed with a negligent misrepresentation claim under New York law, a plaintiff must prove:

(1) the defendant had a duty, as a result of a special relationship, to give correct information;
(2) the defendant made a false representation that he or she should have known was incorrect;
(3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose;
(4) the plaintiff intended to rely and act upon it; and
(5) the plaintiff reasonably relied on it to his or her detriment.

*See Tuosto v. Philip Morris USA Inc.*, No. 05 Civ. 9384, 2007 WL 2398507, at *14 (S.D.N.Y. Aug. 21, 2007); *see also Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,

375 F.3d 168, 187-88 (2d Cir. 2004); *King v. Crossland Sav. Bank*, 111 F.3d 251, 257-58 (2d Cir. 1997). Thus, in order to satisfy the above test, a plaintiff must plead that a defendant made a representation that it knew or should have known was incorrect, and that the defendant owed the plaintiff a duty as a result of a special relationship. *See Tuosto*, 2007 WL 2398507, at *14-15. GMA's pleadings fail on both accounts.

### A.   GMA Cannot Prove that ePartners <br> Made Any Actionable False Representations

GMA fails to properly plead any allegations that ePartners made a false representation that it knew or should have known was incorrect. Where a representation is promissory, as opposed to factual, this cause of action does not lie. *See Rosoff v. Mountain Laurel Ctr. for the Performing Arts*, 317 F. Supp. 2d 493, 499 (S.D.N.Y. 2004) (Kaplan, J.); *see also U S West Fin. Servs., Inc. v. Tollman*, 786 F. Supp. 333, 344 (S.D.N.Y. 1992). Statements that optimistically predict performance are a promise of future fact, as opposed to a representation of existing fact, and are not colorable as a negligent misrepresentation claim. *See Rosoff*, 317 F. Supp. 2d at 499. In addition, Rule 9(b) of the Federal Rules of Civil Procedure does not afford a claimant license to plead a negligent misrepresentation claim based on speculation and conclusory allegations. *Wexner*, 902 F.2d at 172; *Tuosto*, 2007 WL 2398507, at *15.

GMA's negligent misrepresentation claim asserted in the Amended Complaint and proposed Second Amended Complaint fails as a matter of law, because the allegedly negligent misrepresentations (quoted in the section above) do not rise to the standard required. As with the fraud allegations, the alleged negligent misrepresentations are either (1) optimistic predictions or conditional statements of performance that are not representations of existing facts, or (2) statements made after the subject agreements were entered into. As such, GMA's negligent

misrepresentation cause of action fails to state a claim for which relief may be granted and should be dismissed.

### B.  GMA Cannot Establish a Duty as a Result of a Special Relationship Between the Parties

To succeed on a negligent misrepresentation claim, a plaintiff must also plead that a special relationship existed between the parties as a result of (1) an awareness of the speaker that his statements will be used for a particular purpose, (2) a reliance by a known party on the statements in furtherance of that purpose, and (3) conduct by the speaker linking it to the other party that demonstrates its understanding of the reliance. *Cannon v. Douglas Ellman, LLC*, No. 06 Civ. 7092, 2007 WL 4358456, at *11 (S.D.N.Y. Dec. 10, 2007); *see also King*, 111 F.3d at 257-58. Having specialized knowledge about a subject that the other party does not have does not necessarily give rise to a special relationship in commercial situations. *See Phillips v. Am. Int'l Group, Inc.*, 498 F. Supp. 2d 690, 698 (S.D.N.Y. 2007). The parties must have a relationship of trust and reliance closer than that of an ordinary buyer and seller; an arm's length transaction is not enough to create the special relationship required to bring a negligent misrepresentation claim. *Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 536 (S.D.N.Y. 2001).

GMA fails to plead that the parties had a special relationship such that would give rise to a negligent misrepresentation claim. The Master Services Agreement even reflects the arm's length nature of the transaction and GMA's willing participation as a sophisticated party to it. *See* Exhibit A to Amended Complaint at Section 6.0 ("[GMA] ACKNOWLEDGES THAT IT IS A SOPHISTICATED PARTY TO THIS AGREEMENT …"). There can be no doubt that the parties were both sophisticated entities doing business at arm's length. As GMA itself alleges in the proposed Second Amended Complaint, it approached ePartners and informed ePartners of its

7

need for a platform that could perform complicated functions for its multi-faceted and complex business. *See* proposed Second Amended Complaint at ¶ 12. That GMA was a sophisticated entity with its own in-house computer technicians is also alluded to in GMA's pleading. *See* proposed Second Amended Complaint at ¶ 29 (mentioning GMA's Vice President of Information Systems). The parties negotiated a series of agreements covering the project, and GMA even negotiated for its *own* technical resources and information technology employees to work with the ePartners personnel. *See* proposed Second Amended Complaint at ¶¶ 24-28, 39; Exhibit D to Amended Complaint ("7.1 [GMA] and ePartners mutually maintain overall responsibility for the project schedule and will each assign a Project Manager .... 7.3 [GMA] must provide a dedicated core team covering all modules and sub-modules... and such team will allocate a material portion of their work time to this project."). Clearly, no special relationship existed between GMA and ePartners. Because GMA is unable to establish that ePartners owed it a duty per a special relationship, its negligent misrepresentation claim must fail as a matter of law.

GMA has failed to properly plead, or re-plead, its negligent misrepresentation claim. GMA cannot demonstrate that ePartners made any actionable false representations and is unable to plead the existence of a special relationship between the parties. Dismissal of the negligent misrepresentation cause of action is therefore warranted.

## POINT II

### GMA Cannot Refute that the Economic Loss Rule
### Bars its Negligent Misrepresentation and Fraud Claims

**1.    The Economic Loss Rule Bars GMA's Negligent**
**Misrepresentation and Fraud Claims, Even as**
**Re-Pled, Because of the Nature of the Damages Sought**

In addition to GMA's failure to plead its negligent misrepresentation and fraud claims

with sufficient particularity, GMA cannot escape the fact that the economic loss rule applies in

the present case and bars its claims on this basis as well.  As noted in the Motion to Dismiss, if

damages sought are the type that are remedial in contract, a plaintiff may not recover in tort.  *See*

*Orlando v. Novurania of Am., Inc.*, 162 F. Supp. 2d 220, 225-26 (S.D.N.Y. 2001); *Carmania*

*Corp., N.V. v. Hambrecht Terrell Int'l*, 705 F. Supp. 936, 940 (S.D.N.Y. 1989).  GMA has failed

to counter ePartners' argument that its fraud and negligent misrepresentation causes of action are

remedial in contract and has failed to re-plead that these claims seek more than the alleged loss

of the benefit of its bargain.  *See Orlando*, 162 F. Supp. 2d at 225-26.

In its Opposition, GMA claims that it seeks "out of pocket losses, damage to its business,

as well as rescission of the contract," and relies on an argument that it seeks extra-contractual

damages because it merely mentions in the factual allegations section of the Amended Complaint

and proposed Second Amended Complaint that ePartners allegedly caused disruption and

damage to its business.  Opposition at p. 3.  However, it is longstanding New York law that

where a tortious conduct claim seeks the exact same damages as those sought in contract, then

the claims are duplicative and the tort claim will not lie.  *See McMahan & Co. v. Bass*, 250

A.D.2d 460, 462, 673 N.Y.S.2d 19, 22 (1st Dep't 1998) (collecting cases).  In the proposed

Second Amended Complaint, GMA seeks the *exact same* damages in its breach of contract claim

that it does in its negligent misrepresentation and fraud claims.  *See* proposed Second Amended

9

Complaint at ¶¶ 63, 91, 98 (seeking $1,343,000 in damages). Therefore, contrary to GMA's argument that it does not merely seek benefit of the bargain damages, it is obvious that GMA has adopted a familiar strategy of stating a cause of action for breach of contract in numerous guises, all of which are remedial in contract. *See Orlando*, 162 F. Supp. 2d at 224-25; *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389-90, 521 N.Y.S.2d 653, 656-57 (1987).

2.      **The Economic Loss Rule Bars GMA's Negligent**
      **Misrepresentation Claim, Even as Re-Pled,**
      **Because No Separate Legal Duty Has Been Pled**

Because GMA has also failed to properly plead that ePartners violated a legal duty separate from the parties' agreements, its negligent misrepresentation claim must be dismissed pursuant to the economic loss rule. As noted in the Motion to Dismiss, under New York's economic loss rule, a plaintiff must allege a legal duty separate from the parties' agreement. *See Orlando,* 162 F. Supp. 2d at 224-25; *Clark-Fitzpatrick, Inc.*, 70 N.Y.2d at 389-90, 521 N.Y.S.2d at 656-57 (1987). GMA ignores this facet of the law in its Opposition, and only argues in passing that in some circumstances, a negligent misrepresentation claim may not be precluded by the economic loss rule. *See* Opposition at p. 3. GMA has simply failed to allege a legal duty separate from the parties' agreements, and its negligent misrepresentation claim must be dismissed in accordance with the economic loss rule. *See generally* proposed Second Amended Complaint.

## POINT III

### The Existence of Valid, Enforceable Agreements Between the Parties
### Warrant Dismissal of GMA's Quasi-Contractual Claims

In its Opposition, GMA claims that it is entitled to relief under the quasi-contractual claims of unjust enrichment and breach of duty of good faith and fair dealing because ePartners has not "acknowledged or admitted" that the agreements at issue are valid and enforceable. *See*

Opposition at p. 4. GMA misleadingly cites ePartners' Answer to the Amended Complaint, in which ePartners merely denies that one of the agreements at issue was signed by both parties. *See* Answer to Amended Complaint at ¶ 21. In fact, ePartners "acknowledge[d] the existence of a valid, written agreement between the parties" in the unjust enrichment section of the Motion to Dismiss, and stated that "a contract exists between the parties" in the breach of duty of good faith and fair dealing section. Motion to Dismiss at pp. 9, 13.

Under New York law, the existence of a valid contract generally preempts quasi-contractual claims, and because neither ePartners *nor* GMA have alleged that any of the agreements at issue are not valid and enforceable, GMA's quasi-contractual claims should be dismissed. *See Ohio Players, Inc. v. Polygram Records, Inc.*, No. 99 Civ. 0033, 2000 WL 1616999, at *4 (S.D.N.Y. Oct. 27, 2000) (granting defendant's motion for judgment on the pleadings dismissing quasi-contractual claims and holding, "[a]s Plaintiff raises no other claim that the contract is unenforceable, clearly a valid contract governs this dispute"); *see also Maalouf v. Salomon Smith Barney, Inc.*, No. 02 Civ. 4770, 2003 WL 1858153, at *6-7 (S.D.N.Y. Apr. 10, 2003) (explaining that quasi-contractual claims can ordinarily be maintained "only in the absence of a valid, enforceable contract," but allowing the quasi-contractual claim in that case because the defendant pled that certain actions complained of by the plaintiff occurred after the subject agreements had terminated and therefore the service rendered could be found to be outside the scope of the agreements) (cited by GMA in its Opposition). In the instant case, however, there is no question that all of the services that GMA complains of fall within the scope of the agreements between the parties. Because valid, enforceable contracts govern the parties' dispute, GMA's quasi-contractual claims must be dismissed.

## POINT IV

### GMA Cannot Prove that its Breach of Implied Warranty
### Claim Should Survive ePartners' Motion to Dismiss

1.  **GMA Cannot Refute that New York Recognizes
    No Cause of Action for Breach of Implied
    Warranty of a Service-Oriented Contract**

As set forth in ePartners' Motion to Dismiss, under New York law a plaintiff may not

bring an action for breach of implied warranty for the performance of professional services in

service-oriented contracts. *See* Motion to Dismiss at pp. 11-12 and authority cited therein. It is

well settled that where a transaction for professional services is predominately service-oriented,

an action for breach of an implied warranty will not lie. *See In re September 11 Prop. Damage*

*and Bus. Loss Litig. v. Port Auth.*, 468 F. Supp. 2d 508, 535 (S.D.N.Y. 2006); *Barnett v. City of*

*Yonkers*, 731 F. Supp. 594, 601 (S.D.N.Y. 1990); *Traub v. Cornell Univ.*, No. 94 Civ. 502, 1998

WL 187401, at *7 (N.D.N.Y. Apr. 15, 1998) (holding that express and implied warranty

provisions of the Uniform Commercial Code do not apply to contracts "that are predominantly

for service rather than the sale of goods"); *Perlmutter v. Beth David Hosp.*, 308 N.Y. 100, 104,

107, 123 N.E.2d 792, 793-94, 796  (1954).

In its Opposition, GMA fails to make any meaningful effort to refute this principle of

law. *See* Opposition at p. 5. Rather, GMA attempts to circumvent the law and argue that

because it "is complaining of the failure of defendant's [sic] product to perform," its breach of

implied warranty claim is not barred.[3]  *Id.*  However, neither the Amended Complaint on file nor

the proposed Second Amended Complaint make a claim that the software product at issue failed

GMA or had a defect.  Regardless, the fact that GMA complains about ePartners' product does

not entitle its breach of implied warranty claim to survive.  There can be no question that the

---

[3] GMA also argues in this section of its Opposition that ePartners "denies the product contract." Opposition at p. 5.
As explained in Point III above, neither party has pled that the validity of any of the subject agreements is at issue.

service-oriented portions of the agreements between the parties predominate over the sales portions, and in such agreements, the express and implied warranty provisions of the Uniform Commercial Code do not apply. *See Traub*, 1998 WL 187401 at *7. Because the contracts between the parties are predominately service-oriented, GMA's claim for breach of implied warranty must fail under New York law.

**2.    The Waiver of Implied Warranties Provision is Enforceable**

In its Opposition, GMA also argues (in one sentence, unsupported by case law) that "defendant [sic] quotes a 'warranty disclaimer' from a contract that itself contains 3 paragraphs of 'Warranties' immediately preceding this disclaimer, which makes the scope of the disclaimer even with respect to the singular contract containing the disclaimer ambiguous." Opposition at p. 5. This is a red herring contrived to divert the Court's attention from the state of the law concerning service-oriented agreements and implied warranties. GMA has neither pled nor raised in its Opposition that any part of any agreement at issue is ambiguous. As demonstrated above, the waiver of implied warranties provision is fully enforceable, and GMA's breach of implied warranty claim must be dismissed in accordance with New York law.

### POINT V

**GMA's Claim for Punitive and Exemplary**
**Damages Cannot Survive ePartners' Motion to Dismiss**

Even if the Court allows GMA to proceed with its tort claims, GMA's proposed Second Amended Complaint again fails to state a claim for punitive and exemplary damages. As set forth in ePartners' Motion to Dismiss, in order to be eligible to recover punitive damages for a tort claim that has its genesis in a contractual relationship, GMA "must demonstrate that the alleged misconduct was aimed at the public generally and that the misconduct evinced a high degree of moral turpitude such as to imply a criminal indifference to civil obligations." *Sofi*

*Classic S.A. de C.V. v. Hurowitz,* 444 F. Supp. 2d 231, 247-48 (S.D.N.Y. 2006) (quoting *Rocanova v. Equitable Life Assurance Soc'y of U.S.,* 83 N.Y.2d 603, 613, 612 N.Y.S.2d 339, 342 (1994)); *Ventus Networks, LLC v. Answerthink, Inc.*, No. 05 Civ. 10316, 2007 WL 582736, at *3 (S.D.N.Y. Feb. 22, 2007) (where plaintiff claimed to have been fraudulently induced to enter into a contract, court granted defendant's request to strike punitive damages demand because plaintiff did not establish public harm or egregious conduct elements).

The single case cited by GMA in support of its plea for punitive damages is a one-page Fourth Department case, holding in part that *if* the party at issue can prevail on a fraud counterclaim, it *may be entitled* to punitive damages. *See* Opposition at p. 7; *AT&T Info. Sys., Inc. v. McLean Bus. Servs., Inc.*, 175 A.D.2d 652, 653, 572 N.Y.S.2d 582, 583 (4th Dep't 1991). The *AT&T* case does not offer insight into whether the allegations of the party seeking punitive damages met the standards of Rule 12 of the Federal Rules of Civil Procedure, and does not indicate whether the parties in that case agreed to limit damages, as did ePartners and GMA. *See AT&T Info. Sys., Inc.*, 175 A.D. 2d at 652-53, 572 N.Y.S.2d at 582-83. In the present case, the parties specifically agreed to limit damages of this type in their Master Services Agreement. *See* Motion to Dismiss at p. 15.

Because GMA has failed, yet again, to plead the required public harm and egregious conduct elements necessary to state a claim for punitive and exemplary damages, and because the parties agreed to limit punitive and exemplary damages, this claim should be dismissed.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in its Motion to Dismiss, ePartners respectfully requests that this Court enter an Order (i) dismissing Counts 2 through 6 of GMA's Amended Complaint with prejudice; (ii) denying GMA's request to file its proposed Second Amended Complaint; and (iii) granting such other relief as the Court deems just and proper.

Dated: New York, New York
      December 28, 2007

            Respectfully submitted,

            THELEN REID BROWN RAYSMAN &
            STEINER LLP

            By: _____
                Peter Brown
                Sheryl H. Altwerger

            875 Third Avenue
            New York, NY 10022
            (212) 603-2000

            Attorneys for Defendant ePartners Incorporated

            -and-

            Hermes Sargent Bates, LLP
            Amy Davis Benavides, *pro hac vice*
            Anthony H. Lowenberg, *pro hac vice*
            901 Main Street, Suite 5200
            Dallas, Texas 75202
            (214) 749-6000

1227829

## CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2007, I served a true and correct copy of

Defendants Reply Memorandum of Law in Further Support of Defendant's Motion to Dismiss,

by Federal Express addressed to the following counsel of record for Plaintiff:

Andrew T. Sweeney
The Bostany Law Firm
40 Wall Street, 61st Floor
New York, NY 10005


Dated: December 28, 2007

_____
Maxine Lothian