# EXHIBIT #1

BAKER HOSTETLER LLP
Peter Brown (PB2980)
Melissa M. Carvalho (MC6396) *admission pending*
45 Rockefeller Plaza, 11th Floor
New York, New York 10111
(212) 589-4200

HERMES SARGENT BATES, LLP
Amy E. Davis (AD2800), *pro hac vice*
Anthony H. Lowenberg (AL7266), *pro hac vice*
901 Main Street, Suite 5200
Dallas, Texas 75202
(214) 749-6000

Attorneys for Defendant ePartners Incorporated

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

GMA ACCESSORIES, INC.,                    : **ECF CASE**
                                          :
                                          : No. 07 CV 8414 (LAK)
                  Plaintiff,              :
                                          : **AMENDED ANSWER, AFFIRMATIVE**
       - against -                        : **DEFENSES AND COUNTERCLAIM**
                                          :
EPARTNERS, INC.                           :
                  Defendant.              :
                                          :
                                          :
-------------------------------------------------------- X

## <u>DEFENDANT ePARTNERS INCORPORATED'S AMENDED ANSWER,</u><br><u>AFFIRMATIVE DEFENSES AND COUNTERCLAIM</u>

COMES NOW, Defendant/Counter-Plaintiff, ePartners Incorporated ("ePartners), by and through its attorneys of record, Amy E. Davis and Hermes Sargent Bates, L.L.P., and answers Count I of the Amended Complaint (the remaining claims having previously been dismissed by the Court), brings its Affirmative Defenses, and brings its Counterclaim against GMA Accessories, Inc. ("GMA") as follows:

<u>AMENDED ANSWER, AFFIRMATIVE DEFENSES AND</u>
<u>COUNTERCLAIM OF ePARTNERS INCORPORATED</u>



Page 1

# I.
## AMENDED ANSWER

## NATURE OF THE CASE

1.    Neither admits nor denies the statements set forth in the unnumbered paragraph of the "Nature of the Case" section of the Amended Complaint insofar as they require no response and to the extent that the assertions are deemed to be assertions that require a response, denies each and every allegation, except avers that Defendant entered into various agreements with Plaintiff and that those agreements form the basis of the present lawsuit.

## PARTIES

2.    Denies information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 1 of the Amended Complaint.

3.    Denies information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 2 of the Amended Complaint.

4.    Denies information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 3 of the Amended Complaint.

5.    Admits paragraph 4 of the Amended Complaint.

6.    Admits the allegations of paragraph 5 of the Amended Complaint.

## JURISDICTION AND VENUE

7.    Denies the allegations of paragraph 6 of the Amended Complaint, except avers that plaintiff seeks to invoke subject matter jurisdiction as set forth therein.

8.    Denies the allegations of paragraph 7 of the Amended Complaint, except avers that plaintiff asserts that venue is proper.

9.    Denies information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 8 of the Amended Complaint.

10.    Admits the allegations of paragraph 9 of the Amended Complaint.

## FACTUAL ALLEGATIONS

11.    Denies information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 10 of the Amended Complaint.

12.    Denies information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 11 of the Amended Complaint.

13.    Denies information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 12 of the Amended Complaint.

14.    Denies information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 13 of the Amended Complaint.

15.    Denies information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 14 of the Amended Complaint.

16.    Denies information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 15 of the Amended Complaint.

17.    Denies information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 16 of the Amended Complaint.

18.    Denies information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 17 of the Amended Complaint.

19.    Denies information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 18 of the Amended Complaint.

20.    Denies information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 19 of the Amended Complaint.

21.    Denies the allegations of paragraph 20 of the Amended Complaint, except avers that a representative of Plaintiff signed the referenced document.

22.    Denies the allegations of paragraph 21 of the Amended Complaint, except avers that the referenced document pertains to the sale of software, and respectfully refers the Court to the Product Order for its contents.

23.    Admits the allegations of paragraph 22 of the Amended Complaint.

24.    Denies the allegations of paragraph 23 of the Amended Complaint, except avers that per the referenced document, Defendant was to provide certain professional services to Plaintiff, and respectfully refers the Court to the Master Services Agreement for its contents.

25.    Admits the allegations of paragraph 24 of the Amended Complaint.

26.    Denies the allegations of paragraph 25 of the Amended Complaint, except avers that the referenced document pertains to the professional services that Defendant was to provide to Plaintiff, and respectfully refers the Court to the Master Services Agreement for its contents.

27.    Denies the allegations of paragraph 26 of the Amended Complaint.

28.    Denies the allegations of paragraph 27 of the Amended Complaint.

29.    Denies the allegations of paragraph 28 of the Amended Complaint.

30.    Denies the allegations of paragraph 29 of the Amended Complaint.

31.    Denies the allegations of paragraph 30 of the Amended Complaint, except avers that the parties entered into the referenced document.

32.   Neither admits nor denies the statements set forth in paragraph 31 of the Amended Complaint insofar as they require no response and to the extent the assertions are deemed to be assertions that require a response, denies each and every allegation.

33.   Denies the allegations of paragraph 32 of the Amended Complaint, and respectfully refers the Court to the referenced documents for their terms.

34.   Denies the allegations of paragraph 33 of the Amended Complaint, except avers that the referenced section in the referenced document concerns personnel changes, and respectfully refers the Court to the referenced documents for their terms.

35.   Denies the allegations of paragraph 34 of the Amended Complaint, except avers that the referenced section in the referenced document concerns a warranty, and respectfully refers the Court to the referenced document for its terms.

36.   Denies the allegations of paragraph 35 of the Amended Complaint, except avers that the referenced section in the referenced document concerns construction of the system made the basis of the present lawsuit, and respectfully refers the Court to the referenced document for its terms.

37.   Denies the allegations of paragraph 36 of the Amended Complaint, except avers that the referenced section in the referenced document concerns the identification of functional requirements, and respectfully refers the Court to the referenced document for its terms.

38.   Denies the allegations of paragraph 37 of the Amended Complaint, except avers that the referenced section in the referenced document concerns providing assistance for technical resources, and respectfully refers the Court to the referenced document for its terms.

39.   Denies the allegations of paragraph 38 of the Amended Complaint, except avers that the referenced section in the referenced document concerns configurations for domestic and

international operations, and respectfully refers the Court to the referenced document for its terms.

40.    Denies the allegations of paragraph 39 of the Amended Complaint, except avers that the referenced section in the referenced document concerns mapping, and respectfully refers the Court to the referenced document for its terms.

41..    Denies the allegations of paragraph 40 of the Amended Complaint, except avers that the referenced section in the referenced document concerns retention of a Subject Matter Expert, and respectfully refers the Court to the referenced document for its terms.

42.    Denies the allegations of paragraph 41 of the Amended Complaint.

43.    Denies the allegations of paragraph 42 of the Amended Complaint.

44.    Denies the allegations of paragraph 43 of the Amended Complaint.

45.    Denies the allegations of paragraph 44 of the Amended Complaint.

46.    Denies the allegations of paragraph 45 of the Amended Complaint.

47.    Denies the allegations of paragraph 46 of the Amended Complaint.

48.    Denies the allegations of paragraph 47 of the Amended Complaint.

49.    Denies information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 48 of the Amended Complaint.

50.    Denies information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 49 of the Amended Complaint.

51.    Denies the allegations of paragraph 50 of the Amended Complaint.

52.    Denies the allegations of paragraph 51 of the Amended Complaint.

53.    Denies the allegations of paragraph 52 of the Amended Complaint.

54.    Denies the allegations of paragraph 53 of the Amended Complaint.

55.      Denies the allegations of paragraph 54 of the Amended Complaint.

56.      Denies information or knowledge sufficient to form a belief as to the truth of the allegations of paragraph 55 of the Amended Complaint.

57.      Denies the allegations of paragraph 56 of the Amended Complaint.

<u>**COUNT I – (Breach of Contract)**</u>

58.      With regard to the allegations contained in paragraph 57 of the Amended Complaint, Defendant repeats and realleges each of its answers to paragraphs 1 through 56 as if fully set forth herein.

59.      Neither admits nor denies the statements set forth in paragraph 58 of the Amended Complaint insofar as it contains legal conclusions or statements of law to which no answer by Defendant is required and to the extent that the assertions are deemed to be assertions that require a response, denies each and every allegation.

60.      Denies the allegations of paragraph 59 of the Amended Complaint.

61.      Denies the allegations of paragraph 60 of the Amended Complaint.

62.      Denies the allegations of paragraph 61 of the Amended Complaint.

63. – 102.      Neither admits nor denies paragraphs 62 through 102 of the Amended Complaint, as those paragraphs are the subject of Defendant's Motion to Dismiss, filed on October 29, 2007, which requests that Counts 2 through 6 of the Amended Complaint (contained in paragraphs 62 – 102) be dismissed with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6). The Motion to Dismiss was granted by the Court on March 18, 2008; the Court's Memorandum and Order thereon is incorporated by reference herein.

## II.
## AFFIRMATIVE DEFENSES

### AS A FIRST AFFIRMATIVE DEFENSE

103.    The Complaint fails to state a claim upon which relief can be granted.

### AS A SECOND AFFIRMATIVE DEFENSE

104.    Plaintiff's claims are barred in whole or in part due to its own conduct.

### AS A THIRD AFFIRMATIVE DEFENSE

105.    Plaintiff is estopped from asserting its claims in whole or in part due to its own conduct.

### AS A FOURTH AFFIRMATIVE DEFENSE

106.    Plaintiff has failed to mitigate its damages, if any.

### AS A FIFTH AFFIRMATIVE DEFENSE

107.    Plaintiff's claims are barred in whole or in part based upon the doctrine of unclean hands.

### AS A SIXTH AFFIRMATIVE DEFENSE

108.    The damages Plaintiff seeks to recover are barred in whole or in part by, among other things, the warranty disclaimer contained in Section 6.0 of the parties' Master Services Agreement.

### AS A SEVENTH AFFIRMATIVE DEFENSE

109.    Defendant has performed its obligations in accordance with the agreements between the parties.

## AS AN EIGHTH AFFIRMATIVE DEFENSE

110.    Defendant has delivered, and plaintiff has received, the benefit of its bargain under the agreements between the parties.

## AS A NINTH AFFIRMATIVE DEFENSE

111.    Defendant reserves the right to raise any and all other defenses that may become evident during discovery and during any other proceedings in this action.

## III.
## ORIGINAL COUNTERCLAIM

## PARTIES

112.    ePartners has made an appearance and is properly before the Court.

113.    GMA initiated this lawsuit and is properly before the Court.

## FACTUAL ALLEGATIONS

114.    ePartners brings this Counterclaim pursuant to Rule 13 of the Federal Rules of Civil Procedure.  The Counterclaim is within the jurisdiction of the Court, and it arises out of the same transaction or occurrence that is the subject of GMA's suit.  Adjudication of this Counterclaim does not require the presence of third parties whom are beyond this Court's jurisdiction.  Venue is proper with this Court, as this Court currently has jurisdiction over the original cause of action filed by GMA.

115.    GMA is in the wholesale, manufacture and design business of men's, women's, children's and home fashion and fashion accessories.  GMA's principal place of business is New

York City, although it has a New Jersey office and, upon information and belief, employees or consultants in multiple countries overseas.

116.   ePartners is a software reseller and implementation company which helps companies implement software solutions. After a vetting process during which ePartners was carefully scrutinized and evaluated, Microsoft Business Solutions ("Microsoft") selected ePartners as one of its reseller partners in 1999; ePartners continues to be a Microsoft partner today.

117.   GMA filed this lawsuit against ePartners claiming that ePartners failed to adequately perform under the parties' Purchase Order (executed March 31, 2005), Master Services Agreement (executed June 8, 2005), Master Service Order GMA002 (executed June 8, 2005) and Master Service Order GMA 0002 Addendum A (executed September 27, 2005) (the "Agreements") by which ePartners would configure and implement an enterprise-wide software solution for GMA designed to bring the company efficiencies in its business processes and cost savings (the "Project").

118.   GMA admits that, prior to entering the Agreements with ePartners, the first of which was executed in March 2005, it had conducted its own diligent investigation as to the software available to provide the enterprise-wide solution the company sought. As a result of this due diligence, GMA selected Axapta, an enterprise-wide software solution licensed by Microsoft. GMA admittedly understood prior to entering into these Agreements, that there was no "off the shelf" software available for the software solution that it sought. GMA similarly and admittedly understood that the Axapta software it selected would require much customization in order to suit the purposes for which GMA purchased it. GMA admittedly and likewise

understood at the time that such an undertaking would be "big," taking at least a year and, perhaps, longer.

119.   As with the Axapta software, GMA performed diligent investigation as to several third party add on software modules that became part of the software solution. GMA selected, in particular, Circon, a fashion-oriented third party module also available through Microsoft.

120.   The parties' Product Order, the last sentence of Paragraph 1 of the Product Order Terms and Conditions in particular, reflects GMA's representations regarding this due diligence: "Customer has performed reasonable due diligence in regards to the Items and understands that the selection of the Items is determined by the Customer."

121.   GMA sought and received deep discounts on the software and services to be provided by ePartners under the Agreements.   As a result of these discounts and other concessions made by ePartners to GMA, ePartners suffered a loss on the Agreements. ePartners agreed to offer the software and services under the Agreement at these deep discounts, making the Project a loss leader, in reliance on representations made by GMA and George Altirs, President and owner of GMA, to perform under the Agreements in order that, together, the parties would create a software solution relevant not only to GMA but also other companies within the fashion industry, referred by the parties and, generally, within the technology industry as a vertical solution.

122.   ePartners also agreed to complete the Project as a loss leader because Altirs represented to ePartners that he owned a 55% controlling interest in Aria Systems, Inc., a company that created and/or licensed an ERP software called Aria. GMA used Aria at the time it engaged ePartners and sought, by the Project, to replace the Aria software solution. GMA and Altirs successfully obtained the Project software and services at a discount by his promise that he

could and would cause the current Aria users, approximately 100, to switch from Aria to the vertical software solution to be created by ePartners as part of the Project.

123.    GMA further agreed to market the vertical solution on behalf of ePartners to others within the fashion industry. The parties formalized this agreement in a contract titled the Joint Marketing Agreement ("JMA").

124.    GMA admits that, under the Master Service Agreement ("MSA"), GMA had the following contractual responsibilities, among others:

    a.  Assign a Project Manager for delivery of the project (MSA para. 7.1).

    b.  Support the project and manage the schedule to minimize unproductive activities (MSA para. 7.2).

    c.  Provide a dedicated core team to cover all modules and sub-modules affect by the services of the parties' Service Order. (MSA para. 7.3).

    d.  Ensure that the GMA dedicated team and project management had the authority and support to define, decide and modify existing business processes to achieve greater organizational efficiency and to reduce the cost of system implementation and ongoing support. (MSA para. 7.4).

    e.  Recognize that delays in making decisions relative to the internal processes, project, objectives, and system configuration may extend the target dates and costs associated with the implementation (MSA para. 7.5).

    f.  Assume responsibility for providing ePartners written notification regarding any unsatisfactory ePartners personnel. (MSA para. 7.6).

    g.  Create test plans for system/integration and user acceptance testing would be prepared by GMA with ePartners' assistance. (MSA para. 7.7).

    h.  Be responsible to prepare, validate and map all legacy data for the new system. (MSA para. 7.8).

    i.  Be responsible to provide a technological and processing environment conductive to supporting the system selected by GMA, both during the implementation and subsequent to the implementation, and in accordance with such specifications as recommended by the software publisher and ePartners (MSA para. 7.9)

    j.  Provide a Microsoft Sharepoint environment to support project collaboration (MSA para. 7.9).

    k.  Dedicate person(s) from its implementation team to be present at "go-live" (MSA para. 7.10).

    l.  Present a number of qualified subject matter expert candidates for consideration (MSA para. 7.11).

*See* Master Service Agreement at para. 7 (Exhibit A); *see also* GMA's Responses to ePartners First Set of Admissions, and ePartners' First Set of Admissions to GMA, fully incorporated herein and attached as Exhibit B.

    125.  Under the Master Service Order GMA 0002 and the Addendum A, GMA had nearly identical contractual obligations. *See* Master Services Agreement (Exhibit A), Master Service Order GMA0002 (Exhibit C) and Service Order GMA0002 Addendum A (Exhibit D), all at para. 7.

    126.  Under the Joint Marketing Agreement ("JMA"), GMA had the following contractual responsibilities, among others:

    a.  Represent certain products and services of ePartners to its customers, prospective customers and industry contacts.

    b.  Appoint appropriate team personnel to support the JMA, namely, a sales account representative, marketing liaison and executive sponsor.

c. Provide ePartners a list of the most relevant trade-shows and events where both parties would showcase their marketing alliance.

d. Invite ePartners to its next trade show or similar event in which GMA would be participating.

e. Along with ePartners, organize the logistics related to all aspects of the planning and participation at the above-referenced events.

f. Use is relationships with certain public relation firms to obtain speaking opportunities for GMA at these specific events.

g. Develop an action plan for a joint road show for 2006.

h. Participate in quarterly pipeline review conference calls.

i. Provide reporting of results against mutually agreed upon targets.

j. Mutually author and issue a white paper documents.

k. Refrain from disclosing the confidential information of ePartners.

*See* JMA at paras. 4 and 6(c) (Exhibit E).

127.    Under the Master Services Agreement, the work performed and created by ePartners as part of the Project would be owned by ePartners. GMA would have a perpetual, royalty-free license, nontransferable, nonexclusive license to use internally only. *See* Master Services Agreement at para. 10.0 (Exhibit A).

128.    GMA abandoned the Project and failed to perform under the Agreements and JMA having paid only $390,000 of the total discounted service fee agreed to by the parties of $1,182,500.

**AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM OF ePARTNERS INCORPORATED**                Page 14

## CAUSE OF ACTION 1
## BREACH OF THE AGREEMENTS

129.    ePartners incorporates the foregoing paragraphs as though they were fully set out here.

130.    The Agreements constitute valid, enforceable contracts to which ePartners was a party, on the one hand, and GMA a party, on the other.

131.    ePartners fully performed under the Agreements or, alternatively, was excused from performance under the Agreements by GMA's termination of the Agreements or its lack of performance under the Agreements.

132.    GMA failed to perform under the Agreements, particularly those provisions of the Agreements previously set forth in Paragraphs 124-127 of this Counterclaim.

133.    GMA's breach of the Agreements has caused ePartners injury in the amount of payments for services rendered but, nonetheless, unpaid; lost profits expected but unachieved from the future sale of the vertical solution to be created per the Agreements; losses in the form of extra work and materials made necessary by GMA's pretextual complaints, failure to support or participate in the project, inability to understand reasonable project documentation because of language barriers and/or requests for services beyond the scope of the Agreements; and losses in the form of salary paid to a subject matter expert hired per the Agreements.

## CAUSE OF ACTION 2
## BREACH OF THE JMA

134.    ePartners incorporates the foregoing paragraphs as though they were fully set out here.

**AMENDED ANSWER, AFFIRMATIVE DEFENSES AND**
**COUNTERCLAIM OF ePARTNERS INCORPORATED**                    Page 15

135.    The JMA constitutes a valid, enforceable contract to which ePartners was a party, on the one hand, and GMA a party, on the other.

136.    ePartners fully performed under the JMA or, alternatively, was excused from performance under the JMA by GMA's lack of performance under the JMA.

137.    GMA failed to perform under the JMA, particularly those provisions of the Agreement previously set forth in Paragraph 126 of this Counterclaim.

138.    GMA's breach of the JMA has caused ePartners injury in the amount of lost profits expected but unachieved from the future sale of the vertical solution to be created per the Agreements; and discounts on software and services provided by ePartners to GMA in reliance on the promises made to ePartners by GMA related to joint marketing of the vertical solution, both within and without the JMA.

## CAUSE OF ACTION 3
## QUANTUM MERIUT/UNJUST ENRICHMENT

139.    ePartners incorporates the foregoing paragraphs as though they were fully set out here.

140.    ePartners provided valuable services and materials to GMA for the benefit of GMA.

141.    GMA accepted the valuable services and materials.

142.    GMA had reasonable notice that ePartners expected compensation for the services and materials but failed to make reasonable payment for those services and materials.

143.    ePartners has been injured in the amount of the value of those services and materials.

## CAUSE OF ACTION 4
## MISAPPROPRIATION OF INTELLECTUAL PROPERTY

144.    ePartners incorporates the foregoing paragraphs as though they were fully set out here.

145.    By Paragraph 10 of the Master Services Agreement and other provisions of the Agreements and JMA, GMA agreed to maintain the confidentiality of ePartners work product, trade secrets, proprietary business information and intellectual property.

146.    GMA disclosed the work product, trade secrets, proprietary business information and/or intellectual property of ePartners to SoftSolutions, Microsoft, Full Scope and/or other third parties in violation of the Agreements and JMA.

147.    ePartners has been injured by GMA's disclosure in the amount of cost savings afforded to GMA by use of ePartners work product, trade secrets, proprietary business information and intellectual property.

## CAUSE OF ACTION 5
## BREACH OF THE AGREEMENTS AND JMA WITH REGARD TO
## MISAPPROPRIATION OF INTELLECTUAL PROPERTY

148.    ePartners incorporates the foregoing paragraphs as though they were fully set out here.

149.    By Paragraph 10 of the Master Services Agreement and other provisions of the Agreements and JMA, GMA agreed to maintain the confidentiality of ePartners work product, trade secrets, proprietary business information and intellectual property.

150. GMA breached the Agreements and JMA by disclosure of the work product, trade secrets, proprietary business information and/or intellectual property of ePartners to SoftSolutions, Microsoft, Full Scope and/or other third parties in violation of the Agreements and JMA.

151. GMA's misappropriation is a wrongful act, creating imminent, irreparable harm to ePartners for which there is no adequate remedy at law.

<u>**CAUSE OF ACTION 6**</u>
<u>**BREACH OF FIDUCIARY DUTY**</u>

152. ePartners incorporates the foregoing paragraphs as though they were fully set out here.

153. The JMA reflected a joint venture by and between GMA and ePartners to market an enterprise wide software solution for the fashion and design industry. GMA owed ePartners a fiduciary duty with regard to the joint venture.

154. As a fiduciary in this respect, GMA owed ePartners a duty of loyalty, utmost good faith, candor, to refrain from self-dealing which extends to GMA's agents, employees and other whose interests were or are closely identified with those of GMA, integrity of the strictest kind, fair and honest dealing and full disclosure.

155. GMA breached each and every one of the foregoing duties with respect to the joint venture, particularly in its disclosure of the work product, trade secrets, proprietary business information and/or intellectual property of ePartners to SoftSolutions, Microsoft, Full Scope and/or other third parties in violation of the JMA.

156. ePartners has been injured by these breaches of GMA's fiduciary duty. ePartners damages for this breach include the value of the ePartners' work product, trade secrets,

proprietary business information and/or intellectual property used and disclosed by GMA to third parties, but also in the amount of the benefit GMA has received as a result.

### REMEDIES/PRAYER

157.    ePartners incorporates the foregoing paragraphs as though they were fully set out here.

158.    ePartners seeks monetary damages in the amount of:

    a.    Cost savings afforded to GMA by use of ePartners' work product, trade secrets, proprietary business information and intellectual property;

    b.    Lost profits expected but unachieved from the future sale of the vertical solution to be created per the Agreements;

    c.    Discounts on software and services provided by ePartners to GMA in reliance on the promises made to ePartners by GMA related to joint marketing of the vertical solution, both within and without the JMA;

    d.    Payments for services rendered but, nonetheless, unpaid;

    e.    Losses in the form of extra work and materials made necessary by GMA's pretextual complaints, failure to support or participate in the project, inability to understand reasonable project documentation because of language barriers and/or requests for services beyond the scope of the Agreements; and

    f.    Losses in the form of salary paid to a subject matter expert hired per the Agreements.

159.    ePartners seeks injunctive relief for Causes of Action 4-6.

160.   ePartners seeks an award of costs of court and reasonable and necessary attorneys' fees.

161.   ePartners seeks an award of punitive damages.

162.   ePartners seeks an award of pre- and post-judgment interest at the highest rate allowed by law.

163.   ePartners seeks a dismissal of Count I of the Complaint, with prejudice;

164.   Finally, ePartners seeks all other remedies to which it may show itself entitled, in law or in equity.

Dated: Dallas, Texas
       June _3_ , 2008

                              Respectfully submitted,

                              HERMES SARGENT BATES, LLP

                              By: _Amy E. Davis_  w/ permission Ave

                                  Amy E. Davis (AD2800), *pro hac vice*
                                  Anthony H. Lowenberg (AL7266), *pro hac vice*

                              Hermes Sargent Bates, LLP
                              901 Main Street, Suite 5200
                              Dallas, Texas 75202
                              (214) 749-6000

                              -and-

                              BAKER HOSTETLER LLP
                              Peter Brown (PB2980)
                              Melissa M. Carvalho (MC6396) *admission pending*
                              45 Rockefeller Plaza, 11th Floor
                              New York, New York 10111
                              (212) 589-4200

                              Attorneys for Defendant ePartners, Inc.

AMENDED ANSWER, AFFIRMATIVE DEFENSES AND
COUNTERCLAIM OF ePARTNERS INCORPORATED                          Page 20