UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
GMA ACCESSORIES, INC.,                                              ECF Case

                Plaintiff,                                   Civil Action No.:  07 CV 8414 (LAK)

    - against -

E-PARTNERS, INC.,

                Defendant.
------------------------------------------------------X

### DECLARATION OF DANIEL A. LEVY IN SUPPORT OF MOTION TO COMPEL DISCLOSURE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37

Daniel A. Levy, pursuant to 28 U.S.C. § 1746, declares, upon information and belief, and under penalty of perjury, as follows:

1.      I am an attorney of The Bostany Law Firm, attorneys of record for Plaintiff, GMA Accessories, Inc. ("GMA"), in the above captioned matter, and respectfully make this Declaration, based upon my review of the files, in support of GMA's motion for an Order, pursuant to Rules 37(a)(1) and 37(a)(3)(B)(iv) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") compelling Defendant to comply with Plaintiff's First Request for Documents, dated January 7, 2008, and for such other relief as this Court may deem just and proper.

2.      On January 7, 2008, Defendant was served with Plaintiff's Request for Documents.  Without attaching any documents, Defendant answered this Request on February 6, 2008, a copy of which is attached as **Exhibit A**.

3.      Over a period of time between March, 2008 and May, 2008, Defendant produced PDF images of bates stamped documents via CD and DVD, allegedly responding to Plaintiff's Requests for documents.  The production contained approximately 45,000 pages of material.

4.      After engaging in the arduous task of reviewing the production, I realized the production was incomplete, inaccurate, and wholly insufficient.  I discovered that specific topics that are damaging to Defendant were alluded to in emails that were referenced and/or attached to certain emails that were produced, yet the actual emails and other documents that pertain to such topics were not produced.  Further, we learned of additional damaging facts during depositions,

which were not adequately reflected in the document production.

5.    On May 23, 2008 I attempted to contact Defendant's attorneys so that I could confer with them about the incomplete production, though I was forced to leave voicemail messages as none were available.  That same day I sent a correspondence to Amy Davis, attorney for Defendant, addressing the incomplete production as well as several other issues regarding discovery.  On May 24, 2008 and on May 27, 2008 we sent emails to Defendant's attorneys again requesting to meet and confer.  Having not received any meaningful responses from Defendant's attorneys that could lead us to resolve this issue, on May 28, 2008 I sent another email correspondence to Defendant's attorneys requesting a date and time for a meet and confer, a copy of which is attached as **Exhibit B**.

6.    Defendant's attorneys finally agreed to meet and confer on this issue, and on May 29, 2008, a telephone conference took place.  Defendant's attorneys responded to my complaint by requesting examples of the evidence of the incomplete production, stating that they would analyze and cure the problem once I assist them in understanding their incomplete production.

7.    Later that same day, I sent a lengthy email correspondence to Defendant's attorneys, specifically illustrating the insufficiencies of the production and specifically requesting that defense counsel produce the requested material related to Microsoft Corporation.

8.    I was specifically concerned by the fact that Defendant's attorneys categorically withheld practically all documents regarding Defendant's relationship with Microsoft Corporation ("Microsoft").  I learned of this issue when I read an email authored by Ken Eldridge – Defendant's General Manager – produced by Defendant and stamped eP 05333, which contains copies or excerpts of two other email messages affixed to the bottom of the email.  The first affixed email, authored by Bruce Steele who worked for Defendant on this project, specifically makes reference to the relationship with Microsoft, the fact that Microsoft actively refers contracts to them, and the fact that Defendant's inability to deliver services "smoothly" caused Microsoft to become "very nervous" about continuing the relationship.  Furthermore, this email evidences the fact that Defendant failed to dedicate proper resources to the project with Plaintiff in order to complete its previous commitments with Microsoft.  A copy of this email is attached as **Exhibit C**.

9.     On May 30, 2008, Amy Davis changed course and sent this firm an email, steadfastly refusing to correct or even analyze the defective production and objecting that "[Defendant's] relationship with Microsoft is irrelevant to whether or not it performed under the parties' agreement."

10.     I learned during the depositions of certain witnesses in this case and upon review of the case file that Plaintiff, at first, approached Microsoft and explained its needs for a new business solution. Microsoft personnel interfaced with certain representatives of the Plaintiff, gathered information, and recommended the product line then known as Microsoft AXAPTA (note that this product is now known as Microsoft Dynamics AX 4.0) along with add-ons and customizations; they also recommended a specific certified partner to deliver the product. From what I understand of this relationship, Microsoft necessarily interfaced with Defendant specifically in reference to the subject matter of the contract that is the basis of this litigation.

11.     According to Microsoft, certified partners must complete specific training, successfully complete assessments, and are able to demonstrate that they have the skills to provide "exceptional levels of service to customers installing and using the product." A copy of Microsoft's description of certified partners for this product line is attached as **Exhibit D**. Indeed, Plaintiff expected exceptional levels of service when it contracted with Defendant.

12.     Although documents pertaining to Microsoft's relationship with Defendant in regards to Microsoft AXAPTA fall within several portions of Plaintiff's Requests for Documents, almost no documents in this regard have been produced to any extent. Specifically, documents on this topic are potentially responsive to Requests A, B, C, D, F, G, H, and I. *See* **Exhibit A**.

13.     It was only after at least four requests that Defendant's attorneys reluctantly agreed to meet and confer on this issue. Further, it does not appear that Defendant's attorneys even met in good faith. Indeed, they promised to evaluate the defective production while we gratuitously agreed to provide assistance. The very next day they recanted their representations that they would evaluate their defective production and simply stated that they stand by their objection and would not correct the omissions.

14.     In truth, these documents are particularly relevant in relation to Plaintiff's claims.

Specifically, Plaintiff alleges, *inter alia*, that Defendant had an obligation to (i) assign adequate resources to the performance of Defendant's obligation contained in the Agreements (the "Project") (Complaint, ¶32); (ii) replace any unsatisfactory personnel (Complaint, ¶33); and, (iii) perform services in a good and workmanlike manner and in accordance with the specifications (Complaint, ¶34). The above described documents are relevant concerning these issues, among others, because they likely will address or relate to these very issues.

15.     Finally, the contract between the parties states that one of Defendant's duties is to "assist [Plaintiff] in implementing Microsoft Business Solutions Axapta software." *See* **Exhibit E**. Clearly, any deviation from Microsoft's guidelines in the implementation would be highly meaningful to the determination of whether Defendant performed in a good and workmanlike manner as required under the contract.


Accordingly, Declarant respectfully requests that this Court compel Defendant to produce those documents responsive to Plaintiff's discovery requests that relate to Microsoft, and such other relief as the Court may deem just and proper.


Dated: New York, New York          THE BOSTANY LAW FIRM
June 5, 2008

By:  Daniel A. Levy, *pro hac vice*
Attorneys for Plaintiff
40 Wall Street – 61st Floor
New York, New York 10005