DL: So, OK. I mean, I, listen . . . I don't have them in my possession. We, we really wanted them for the, the deposition uh that happened on the 27th and that's why there was a 23rd uh deadline, so we, um, I feel like we, we were a little prejudiced there, a bit prejudiced there, by not having these, these records uh before the deposition, so, um, we feel, we reserve our right to make further objections in this regard, um, but as soon as you can get them to us, uh, that would be appreciated. Thank you.

AD: OK. Thanks. And now shall we go back to the second set of discovery requests from GMA to ePartners?

DL: Uh, sure.

AD: OK. Great. Um, as I mentioned, we still need to know how they were served. They did not. . . they were not served to us, uh, despite the fact that we have made a representation and intend to uh, respond with objections and responses to those discovery requests two weeks from yesterday.

DL: Right, but uh, actually this is . . . this conversation isn't the first time I've ever, I've ever learned that um, that you didn't have even, that you didn't them in your possession. Um, all the other times, though, I think I've sent maybe 5 or 6 emails on this, and every time I asked the question, the answer is with another question. "How was it served? How was it served?" Um.

AD: As you might imagine, it is of great concern to us that apparently, uh, you served these and we did not receive them. So, yes, we have asked repeatedly for, um, information about how they were served like. . .

DL: And we answered. . .

AD: like something . . . Excuse me. Excuse me.

DL: . . . we did advise you that they were served on the New York firm.

AD: Well, it is . . . it seems to me that, that generally speaking, these things are served with a cover letter or a certificate of service? And there are neither, and so I - that's what I need. I need a certificate of service and/or a cover letter serving these on ePartners. I mean. . .

DL: Well, I mean. . . .

AD: I take . . . I don't have any reason at this point to uh, disagree that you guys served them on the New York firm, but I would like some proof of service, either -- which is required by the Federal Rules -- a certificate of service and/or a cover letter. So I would like that. In any case, we have agreed to two weeks from yesterday provide you with responses and objections and as soon as we . . . reasonably quickly after that, any responses, non-privileged, non-objectionable documents.

DL:   OK.  We accept that, but um. . . you know, I think that this would have . . . this would have moved forward a lot smoother if we, uh, instead of, you know, keep asking us for the proof of service, I mean, I could've gone to the file to, to look for it, but the whole time um, your . . . your firm wouldn't, wouldn't concede that you didn't have them in your possession and that you had to go check with the New York firm, and you kept asking us, you know, "How was it served?  How was it served?  Even though we advised you it was served on the New York firm.

AL:   And when I asked you, when you first sent that email and I asked you what the deal was, you sent, your reply to me was an attack, so, you know.

AD:   We, yeah, we're very concerned, um, that we're getting representations that they were served, but then you can't provide or produce proof of service, as is required by the Federal Rules.  So, I mean, you can understand. . .

DL:   We can provide it.  I, you know, there was, at the time, there was no, there, there was no suggestion that you didn't have them, you just kept asking us about this proof of service.

AD:   Oh, from the very beginning, we said what - we've never received these.  How were they served?

AL:   What would you infer from such a question anyway?  I mean, you know.

DL:   I mean, they were served two months ago, and, you know, we advised you of that.

AD:   Well, we disagree.  We, we don't have, so we need your help finding out how they were served.  In the meantime, we will start uh, working on the responses, and so we've got an agreement that the responses and objections will be served two weeks from yesterday and responses, uh, non-objectionable, non-privileged documents will come reasonably thereafter.  So, let's move on.  When can we expect to receive either a copy of the certificate of service or a copy of the cover letter uh, that was associated with the second discovery requests?  Could we, could we get an agreement that you'll send proof of that by next Thursday as well?

DL:   Well, we're giving you an 8-week extension on responding to these, to the uh, discovery requests, and I think we too deserve an 8-week extension to, uh, to go through our files and uh, um, answer of your, uh, discovery requests.

AD:   And answer any what?

DL:   Any of your discovery requests.

AD:   Oh, my goodness.  No, no, sir.  We, we won't be agreeing to that.  And I – I think that you have misunderstood.  Right now, all I'm asking about is when will you be serv-. . . when will you be providing to us proof of service of the second requests, second set of discovery requests from GMA to ePartners?  As we've said, you know, all we have is your representation that it was served on . . . uh, whenever you say it was served.  We didn't receive a copy, um, and you have not yet provided a certificate of service or cover letter.  What I'm asking you for is the

certificate of service or cover letter, and I'd like you to provide it by next Thursday. Can you do that?

DL: OK, well in that case, then we are not in agreement that uh, that you have this two month and two-week extension on responding to our discovery requests. Um, and you're simply this late on our original discovery request. We'll get you the proof of service, and I . . .

AD: I don't really understand why our request for proof would, would cause you to uh, renounce the agreement that we just made.

DL: I just misunderstood what we were talking about here. Um, if uh, I thought we were having a mutual, you know, a mutual under- understanding. . . in essence, you have this concession where you have all this extra time to, to respond, uh, if you, if you're raising this objection about the proof of service, and you're making us go find the proof of service and supply it to you, . . .

JB: What I think that what Mr. Levy is saying is that he's _not_ changed his position because you asked for proof of service. He's intending to get that to you in any event. You're entitled to that. I think the reason why Mr. Levy changed his position from granting you, I think it was 10-week extension to respond to these requests is because when he asked you if you would do the same thing for GMA, uh, notwithstanding that we'd answered all of yours already, but I think that what Mr. Levy was talking about is any prospective, uh, any prospective discovery requests that you make, Ms. Davis, uh, that you would, uh, you would be equally as generous to GMA. And then when you said "Absolutely not," um, I think that that's what caused Mr. Levy to then say, well then how can he agree to giving you the extension when you're sort of going into commando-like mode while you're asking for a favor, uh, both biting his hand off and saying immediately send us the proof of service and hitting him over the head with a club and saying by the way, you're not getting a day of extension. So I mean, I think that. . .

AD: Well, . . .

JB: . . . Mr. Levy responds to you, well then it appears that we don't have an agreement, and you're late in your responses and you waived all your objections under the Federal Rules, is a reasonable response from somebody that you put in that position, so can we go on to the next issue now that we've uh, we've completely exhausted the discussion with respect to that issue?

AD: Well, actually, I have a few things to say. Number 1, we're not asking for an 8-week extension of anything. We. . . frankly, um, we wonder if in fact we were served as you represent we were served with those, that second set of discovery, um, and, of course, if we weren't, there's no. . . the information is not overdue. Instead of fighting about the proof and waiting until we receive proof to uh, begin the response, um, process, we have said, you know what, we're going to go ahead and respond. We – we will agree to respond two weeks from yesterday. Um. You're not offering us any concessions. You have failed to offer proof of service, which you are required to do under the Federal Rules, and in fact, Mr. uh Bostany, you've said that we're entitled to that. We have not yet received it despite multiple requests. So you've not given us any concessions. We will always. . . we will continue, as always, to honor reasonable

requests for extensions of time, ri--, as you've said, there's - you have nothing outstanding except you owe me documents that I asked to inspect last Wednesday when I was in New York, and I never got any sort of response to that, but at any rate, uh, you. . . .

JB:   I actually, let me clarify that for the record. We have uh, responded to you, and you haven't responded back to us. If, if you're talking, if the share point and um, test script data bases are what you're referring to with regard to the inspection that you mentioned.

AD:   Well, actually, no. Before last Wednesday, I didn't even realize that these documents, the share point and database documents existed until I learned of them for the first time in the depositions of Mr. Jbeily and Mr. Salevo. What I was talking about were responses to our second request for production of documents which were due on Wednesday, the 22nd.

JB:   Dates for Laura Tomasovsky's deposition, Ms. Davis. We've asked for that several times from you, pursuant to your procedure, um, if the, if the third witness we would be deposing. You've deposed numerous GMA witnesses. Um, you've gotten instantaneous responses from Mr. Paltrowitz regarding his uh, acceptance of every single thing you've proposed, um, and meanwhile, my staff has been emailing you and calling you for several days now, and you've been non-responsive with respect not only to their requests from you for a date that you supply responses to discovery responses, um, I mean discovery requests, and um, your view that that you would be charitable by starting responses before you got a proof of service that . . uh, that you would waite, that you could waive under the Federal Rules, to start your responses until you received a proof of service, and I think that's preposterous. You'll get a proof of service. Your objections are waived. We're leaving that topic. If you want to go to the court and explain to them the overtures that we've made to you and your rejections of those that you've asserted to Mr. Levy's good faith efforts to resolve this with you, you can do that. I think it's quite clear that you're being extremely unreasonable, and you're misconstruing the Federal Rules and the entitlements that you have under them to wait as long as you have to respond to discovery requests that you have not denied that you've had since March. At no time, Ms. Davis, pursuant to all of the communications that you and your staff have had with my staff concerning this issue, and there have been a lot of them, have you ever said that your New York office did not receive these documents in March. You've never said that. So we can only assume that not only are you being harassing by asking us to go through these hoops and provide a proof of service, but you know full well that your New York office has had them. Because your New York office dates stamps things when they come in, and I'm quite sure that you're holding a date-stamped receipt of our discovery requests from back in March, and you're playing these Mickey Mouse games with Mr. Levy because you're somehow thinking that that benefits your client. And I don't think it does, because you waived your objections. You haven't given us a single day of extension in the past. In fact, at a hearing before Judge Kaplan, you demanded that GMA's objections be waived because GMA was a few days late. I don't know if you remember that. . .

AD:   Well. . .

JB:   . . . and we uh accepted that.